SIERRA CLUB, Grand Canyon Chapter; Teresa Leal, an individual, Plaintiffs–Appellants,

v.

Christie Todd WHITMAN,*—in her official capacity as Administrator of the United States Environmental Protection Agency; Felicia Marcus, in her official capacity as Regional Administrator of the United States Environmental Protection Agency Region IX; U.S. Environmental Protection Agency; the United States Environmental Protection Agency Region IX; John Bernal, in his official capacity as Commissioner, U.S. Section of the International Boundary and Water Commission; the U.S. Section of the International Boundary and Water Commission; Cesar Rios, in his official capacity as Mayor, City of Nogales, Arizona; City of Nogales, Arizona, Defendants–Appellees.

No. 00–16895.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2001.

Filed Oct. 2, 2001.

---

* Christie Todd Whitman is substituted for her predecessor, Carol Browner, as Administrator of the United States Environmental Protection Agency.

Vera S. Kornylak, Arizona Center for Law in the Public interest, Tucson, Arizona, for the plaintiffs-appellants.

Ellen J. Durkee, Environment & Natural Resources Division, U.S. Department

of Justice, Washington, D.C., for the defendants-appellees.

Before: CANBY, HAWKINS and GOULD, Circuit Judges.

Opinion by Judge CANBY; Concurrence by Judge GOULD.

## OPINION

CANBY, Circuit Judge:

The question presented by this appeal is whether the actions of the Administrator of the EPA in failing or refusing to find a violation of the Clean Water Act, and in failing or refusing to take enforcement action against the violators, are discretionary decisions of the Administrator that are not subject to judicial review under the Act. We conclude that both decisions are discretionary and therefore not subject to review.

### Facts and Procedural Background

Sierra Club, Grand Canyon Chapter and Teresa Leal (collectively, "Sierra Club") brought this citizen suit against the Environmental Protection Agency (EPA) and its Administrator, EPA Region IX, and the Administrator of Region IX under the Clean Water Act of 1972, 33 U.S.C. § 1365(a)(2). The Sierra Club sued the EPA defendants for their failure to take any action against the City of Nogales or the International Boundary and Water Commission ("Boundary Commission") for their operation of a wastewater treatment plant that was apparently polluting the Santa Cruz River in violation of the Clean Water Act.

The Nogales International Wastewater Treatment Plant ("Treatment Plant") is located in Rio Rico, Arizona, about fourteen kilometers north of the United States–Mexico border. The Treatment Plant, in operation since 1972, serves some 25,000 people in Nogales, Arizona, and another 160,000 in Nogales, Sonora, Mexico.

In Arizona, the EPA administers the National Pollution Discharge Elimination System, a system of permits limiting to specified levels the discharge of various pollutants into waterways. See 33 U.S.C. § 1342. In 1991 the EPA granted a permit to the City of Nogales, Arizona and the United States Section of the Boundary Commission, the joint operators of the Treatment Plant.

The permit expired in 1996. Two years later, the EPA issued another permit for the facility, but withdrew the permit before it came into effect. Because the withdrawal of the new permit is under appeal, the plant continues to operate and to discharge pollutants under its expired permit.

According to the reports submitted to the EPA by Nogales and the Boundary Commission, the Treatment Plant violated its permit limitations 128 times between January 1995 and January 2000. The Clean Water Act provides that, whenever "the Administrator finds that any person is in violation" of permit conditions, the Administrator "shall issue an order requiring such person to comply ... or ... shall bring a civil action" against the violator. 33 U.S.C. § 1319(a)(3). The EPA Administrator, however, has not made a finding of a violation by the Treatment Plant, nor has she taken any of the enforcement actions authorized by the Act.

The Sierra Club brought this action against the EPA to compel it to initiate enforcement action. The suit was brought under 33 U.S.C. § 1365(a)(2), which authorizes any citizen to sue "the Administrator

where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." EPA contended that its decision not to enforce was discretionary, and therefore not within § 1365(a)(2) and its waiver of the sovereign immunity of the United States. The district court agreed with EPA and dismissed for lack of jurisdiction.[1] The Sierra Club appeals.

We agree with the district court that the Clean Water Act leaves it to the discretion of the EPA Administrator whether to find violations and to take enforcement action, and that these discretionary decisions are not subject to judicial review under § 1365(a)(2). We therefore affirm the judgment of the district court.

### Discussion

 We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. Suits against the EPA, as against any agency of the United States, are barred by sovereign immunity, unless there has been a specific waiver of that immunity. *Dept. of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999). Similarly, suits against officials of the United States, including EPA Administrators, in their official capacity are barred if there has been no waiver. *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963). Here, Congress has

waived immunity in § 1365(a)(2) only for suits alleging a failure of the Administrator to perform a non-discretionary duty. Thus, if the Administrator acted within her discretion, the district court properly dismissed for lack of jurisdiction. We review that issue de novo. *See Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 305 (9th Cir.1996) (scope of waiver of immunity is question of law reviewed de novo).

### The Clean Water Act

The Clean Water Act was passed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). More specifically, the Clean Water Act set the goal of eliminating "the discharge of pollutants into the navigable waters." 33 U.S.C. § 1251(a)(1).

One of the primary mechanisms for cleaning up the nation's waterways is a permit system, in which the EPA, or a designated state agency, issues permits for the discharge of pollutants. *See* 33 U.S.C. § 1342(a)-(b). In Arizona, the EPA administers the permit system. Permits contain conditions on the types and amounts of pollutants a permit holder can discharge and require permit holders to collect and report information about pollution discharges. 33 U.S.C. § 1342(a).

---

**1.** Sierra Club had also sued Nogales and the Boundary Commission under § 1365(a)(1), but that portion of the litigation is not on appeal. After dismissing the claims against the EPA and its Administrator, the district court entered a separate judgment in their favor pursuant to Fed.R.Civ.P. 54(b). That separate judgment is the subject of this appeal.

After the EPA and its Administrator were dismissed from the litigation, the Sierra Club, Nogales, and the Boundary Commission reached a settlement that was embodied in a

consent decree. The decree expressly reserved the right of Sierra Club to pursue this appeal. The decree recited that Nogales and the Boundary Commission did not admit any liability. Because the EPA and its Administrator are not parties to the consent decree, they are not bound by it, *see Sierra Club v. Electronic Controls Design, Inc.*, 909 F.2d 1350, 1356 n. 8 (9th Cir.1990), and could pursue enforcement action with regard to past violations. Accordingly, this appeal is not moot.

Beyond the permit system, the Clean Water Act provides several potential enforcement mechanisms, from abatement orders to criminal prosecution. 33 U.S.C. § 1319(a)-(d). The Sierra Club bases its current claim on § 1319(a)(3) of the Clean Water Act, which provides:

> Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [permit conditions], he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

33 U.S.C. § 1319(a)(3).

### Duty to make findings

■ The threshold condition for enforcement set forth in § 1319(a)(3) is that the Administrator "finds" a violation. The Sierra Club contends that, when interpreted as part of the Clean Water Act as a whole, section 1319(a)(3) creates a mandatory duty of the EPA Administrator to make findings when provided with information suggesting a violation. The argument fails for three reasons.

First and most important is the traditional presumption that an agency's refusal to investigate or enforce is within the agency's discretion, unless Congress has indicated otherwise. *See Heckler v. Chaney,* 470 U.S. 821, 838, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (decision not to investigate or enforce committed to agency discretion and unreviewable under the Administrative Procedure Act (APA)); *see also* 5 U.S.C. § 701(a)(2). The presumption of agency discretion recognized in *Chaney* has a long history and, contrary to the Sierra Club's assertion, is not limited to cases brought under the APA. When setting out the presumption in *Chaney,* the Supreme Court relied on four prior cases, none of which had been brought under the

APA. *See Chaney,* 470 U.S. at 831, 105 S.Ct. 1649 (*citing United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (prosecutorial discretion in enforcing criminal statutes); *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (executive branch discretion in deciding what to prosecute); *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (National Labor Relations Act); and *Confiscation Cases,* 7 Wall. 454, 457, 19 L.Ed. 196 (1869) (district attorney's discretion not to prosecute criminal cases and to dismiss civil suits)). After referring to these cases, the Court stated that "the Congress enacting the APA did not intend to alter that tradition." *Chaney,* 470 U.S. at 832, 105 S.Ct. 1649.

■ This presumption of agency discretion can be overcome if Congress indicates that a decision or act is not discretionary. *Id.* at 838, 105 S.Ct. 1649. Section 1319(a)(3) contains no language suggesting that the Administrator has a duty to make findings. *See id.* at 833–34, 105 S.Ct. 1649; *compare* 33 U.S.C. § 1319(a)(3) ("Whenever on the basis of an information available to him the Administrator finds that any person is in violation ...") *with* 29 U.S.C. § 482 ("The Secretary shall investigate [complaints filed] ..."). Instead, section 1319(a)(3) merely states what follows a finding by the Administrator. 33 U.S.C. § 1319(a)(3).

Moreover, the purpose of the Clean Water Act is to restore and maintain national waters and waterways. To achieve this end, the statute provides for a complex arrangement of monitoring through the permit system and enforcement mechanisms to ensure compliance. As previously recognized by the Eighth Circuit, requiring the EPA to "expend its limited resources investigating multitudinous complaints, irrespective of the magnitude of

their environmental significance" could lead to an inability to investigate and enforce those violations the Administrator believes to be the most serious. *Dubois v. Thomas*, 820 F.2d 943, 947–48 (8th Cir. 1987).

Finally, we reject the Sierra Club's argument that a duty on the part of the Administrator to make findings upon learning of a violation is implicit in the mandatory requirement that, upon such findings, the Administrator "shall" issue an order of compliance or commence a civil action. *See* § 1319(a)(3). We reject this argument because, for reasons we now explain, we reject its premise. We conclude that § 1319(a)(3) does not mandate enforcement by the Administrator, even after a finding of violation.

*Duty to take enforcement actions*

■ The traditional presumption laid out in *Chaney* applies to decisions about enforcement, just as it applies to decisions about investigating and making findings. *See Chaney*, 470 U.S. at 831, 105 S.Ct. 1649. The Supreme Court explained why agency decisions about enforcement are not suitable for review:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to

deal with the many variables involved in the proper ordering of its priorities.

*Id.* at 831–32, 105 S.Ct. 1649. These concerns hold true in this case. The EPA has many plants to monitor and must be able to choose which violations are the most egregious. It would be unwise for the judiciary, generally untrained in biology or chemistry and uninformed about the level of violations at other water treatment plants, to attempt to set the priorities for the EPA's enforcement efforts. To leave enforcement decisions to the discretion of the Administrator is not to relieve the EPA of its mission to achieve compliance with the Act; it simply means that the EPA must decide, within the limits set by Congress, the most effective way to accomplish the objectives of the Act as a whole.

It is particularly difficult to review a federal agency's *failure* to take enforcement actions. *See Chaney*, 470 U.S. at 832, 105 S.Ct. 1649. "[W]hen an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers." *Id.* The EPA's decision not to take enforcement measures, like a prosecutor's decision not to indict, is one that is "typically committed to the agency's absolute discretion, such that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Friends of the Cowlitz v. F.E.R.C.*, 253 F.3d 1161, 1171 (9th Cir.2001) (quoting *Chaney*, 470 U.S. at 830–31, 105 S.Ct. 1649) (internal quotations omitted). The decision is entitled to the presumption that it is within the discretion of the agency or official charged with implementing the law. *See Chaney*, 470 U.S. at 832, 105 S.Ct. 1649; *Friends of the Cowlitz*, 253 F.3d at 1171.

■ Again, however, the presumption that the EPA has discretion to decide when to enforce is only a presumption and can be overcome by indications that Congress intended otherwise. Section 1319(a)(3) states that whenever the Administrator finds that there has been a violation, "he shall issue an order requiring such person to comply with [the violated section or requirement], or he shall bring a civil action in accordance with subsection (b) of this section." 33 U.S.C. § 1319(a)(3). It is this language, and especially the word "shall," upon which the Sierra Club principally relies. It is true that "shall" in a statute generally denotes a mandatory duty. *Alabama v. Bozeman,* 533 U.S. 146, ——, 121 S.Ct. 2079, 2085, 150 L.Ed.2d 188 (2001). Nonetheless, the use of "shall" is not conclusive. *See Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). Particularly when used in a statute that prospectively affects government action, "shall" is sometimes the equivalent of "may." *Richbourg Motor Co. v. United States,* 281 U.S. 528, 534, 50 S.Ct. 385, 74 L.Ed. 1016 (1930). The question whether "shall" commands or merely authorizes is determined by the objectives of the statute. *Escoe,* 295 U.S. at 493, 55 S.Ct. 818. Analysis of the structure and the legislative history of the Clean Water Act leads to the conclusion that subsection 1319(a)(3) does not create mandatory enforcement duties.

First, the structure of section 1319 suggests that Congress did not intend the enforcement provisions of § 1319(a)(3) to be mandatory. One of the enforcement options provided in section 1319(a)(3) is to "bring a civil action in accordance with subsection (b)." 33 U.S.C. § 1319(a)(3). Subsection (b) merely states that "[t]he Administrator is *authorized* to commence a civil action for appropriate relief ... for any violation for which he is *authorized* to issue a compliance order under subsection (a) of this section." 33 U.S.C. § 1319(b) (emphasis added). The language of authorization, for both the commencement of a civil action and the issuance of a compliance order, shows congressional intent to give the Administrator these options, not to require their use in all instances.

The legislative history also supports this view; the Conference Committee recited that the Senate bill had required the bringing of a civil action, but the Conference Committee accepted the House version, which merely "authorized" the Administrator to commence civil proceedings. *See* S. Conf. Rep. No. 92–1236, at 131–32 (1972), *reprinted in A Legislative History of the Water Pollution Control Act Amendments of 1972,* at 314–15 (1973). More generally, the legislative history of the predecessor of section 1319 indicates, in a discussion of the enforcement roles of the federal government and the States, that the federal government is to exercise discretion in initiating enforcement:

> ... [T]he authority of the Federal Government should be used judiciously by the Administrator in those cases deserve (sic) Federal action because of their national character, scope, or seriousness. The committee intends the great volume of enforcement actions be brought by the State. It is clear that the Administrator is not to establish an enforcement bureaucracy but rather to reserve his authority for the cases of paramount interest.

S. Rep. No. 92–414, 92d Cong., 1st Sess. (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3730. This view cannot be squared with the contention of the Sierra Club that Congress intended to deprive the Administrator of all discretion and *require* her to act whenever she knows of a violation.

■ Another aspect of the statutory structure that suggests that the enforce-

ment mechanisms are discretionary is the availability of citizen suits to enforce the Clean Water Act. *See* 33 U.S.C. § 1365(a)(1). Citizen suits are intended to supplement, rather than supplant, enforcement actions by the government. *See* 33 U.S.C. § 1365(b)(1) (prohibiting the commencement of citizen suits "if the Administrator ... has commenced and is diligently prosecuting a civil or criminal action in a court ... to require compliance ..."); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). By allowing citizens to sue to bring about compliance with the Clean Water Act, Congress implicitly acknowledged that there would be situations in which the EPA did not act. If that failure to act results from the desire of the Administrator to husband federal resources for more important cases, a citizen suit against the violator can still enforce compliance without federal expense.

The Sierra Club contends that what it refers to as the "step-by-step enforcement scheme" shows that the structure of the Clean Water Act requires, at the very least, an abatement order. This argument does not withstand analysis. The Sierra Club argues that enforcement was intended to proceed "step-by-step," starting with an abatement order, and then progressing to more intrusive enforcement mechanisms. There is no indication, however, in the language of the statute of a progression from one type of enforcement action to another. *See* 33 U.S.C. § 1319(a)-(d). Instead, the multiplicity of enforcement options presents alternatives with no requirement that one type of enforcement precede another.

During the Senate's consideration of the Conference Committee Report, Senator Muskie, one of the primary authors of the Clean Water Act, stated that the final version of section 1319(a)(3) required that the Administrator issue an abatement order upon a finding of a violation. Staff of Senate Comm. on Public Works, 93rd Cong. (Comm. Print 1973), *reprinted in 1 Legislative History of the Water Pollution Control Act Amendments of 1972*, at 161, 174 (1973). Despite Sen. Muskie's invaluable involvement in the passage of the Act, however, his characterization of the statute is not clearly supported by either the language of the Act or the discussions in the legislative history. Taken as a whole, the legislative history of the section supports the presumption that enforcement decisions are within the Administrator's discretion.

### Conclusion

The presumption that enforcement decisions are left to the executive agency responsible for administering a given law, unless Congress indicates otherwise, is a longstanding and well-reasoned one. Neither the language, nor the structure, nor the legislative history of section 1319 shows with any clarity that Congress intended to make either findings or enforcement actions mandatory. The presumption that it is within the EPA's discretion whether to enforce or not enforce in any given case has not been overcome. In concluding that decisions regarding enforcement actions are discretionary, we are in agreement with our two sister circuits that have previously examined this question. *See Dubois*, 820 F.2d 943 (8th Cir.1987); *Sierra Club v. Train*, 557 F.2d 485 (5th Cir.1977).

Because there is no non-discretionary duty that the Administrator has failed to perform, the Sierra Club's litigation against the EPA is not authorized by 33 U.S.C. § 1365(a)(2). There is accordingly no waiver of sovereign immunity and the district court properly dismissed this ac-

tion for lack of subject matter jurisdiction. The judgment of the district court is

**AFFIRMED.**

GOULD, Circuit Judge, concurring:

I concur in the judgment of the court and would affirm the district court's dismissal of the Sierra Club's claim against the Administrator alleging failure to take nondiscretionary actions under the CWA.

Section 1319(a)(3) provides that "[w]henever on the basis of any information available to him the Administrator finds" a violation of certain sections of the CWA, including § 1311 or a permit condition or limitation contained in a permit issued under § 1342, the Administrator "shall issue an order requiring such person to comply" with the statute or "shall bring a civil action" for an appropriate remedy.

The Sierra Club alleges that, pursuant to the requirements of 33 U.S.C. § 1318, the Nogales Treatment Plant submitted monthly discharge monitoring reports to the Administrator disclosing discharges of pollutants into the Santa Cruz River from the Treatment Plant consistently in excess of levels allowed by the permit issued to Nogales and the IBWC. The Sierra Club argues that these reports, the submission of which is not genuinely disputed, require the Administrator to find a violation of § 1342 and to proceed to enforce compliance with the CWA.

There was no doubt that the court has before it substantial evidence that would support a finding of CWA violations. However, the Sierra Club makes no allegation that the Administrator has actually made a finding of a permit violation or of any other violation of the CWA listed in § 1319(a)(3). The plain language of the statute appears to give discretion to the Administrator to make a finding of a violation. By the terms of the statute, a find-

ing is to be made on the basis of information available to the Administrator; the regulatory search for and examination of relevant information is discretionary by its nature. I conclude that this court is not in a position to say when all relevant and appropriate information has been considered by the Administrator.

Moreover, the legislative history of the CWA confirms this literal interpretation of the text of the statute. The legislative history, in part, appears to regard the finding of violation as discretionary, even if action after such a finding is not. Even viewed most favorably to the Sierra Club, I cannot read the legislative history as imposing a nondiscretionary duty to make a finding of violation. Pertinent is the Senate Report outlining the purpose of the bill, which the Sierra Club relies upon in urging that we are faced with nondiscretionary duties of the Administrator. This report provides:

> The purpose of the bill is to establish clear and enforceable requirements upon those activities which affect water quality. Monitoring requirements and information acquisition should reveal violations of control requirements with a minimum of factual complexity. Once the Administrator has, under the procedures established under the bill, determined a violation, the government should immediately proceed to abatement. *Once this decision is made there should be no further discretionary decision making by government officials.*

S. REP. No. 92–414, at 82 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3748 (emphasis added). The emphasized language suggests by clear inference that the finding of violation is discretionary and that thereafter there is "no further discretionary decision making by government officials," meaning then the Administrator must act to enforce compliance.

Similarly, Senator Edmund Muskie, a lead sponsor of the CWA and one favoring vigorous enforcement, in my view stopped short of suggesting that a finding of violation is nondiscretionary. The Sierra Club notes that Senator Muskie, in discussing the Conference Committee Report, inserted the following statement in the Congressional Record:

It is expected, of course, that upon receipt of information giving the Administrator reason to believe that a violation has occurred, *he has an affirmative duty to take the steps necessary to determine whether a violation has occurred, including such investigations as may be necessary, and to make his finding as expeditiously as practicable.*

118 Cong. Rec. 33,697 (1972), *reprinted in* 1 A LEGISLATIVE HISTORY OF THE WATER POLLUTION CONTROL ACT AMENDMENTS OF 1972, at 174 (1973) (emphasis added). While this suggests that the Administrator has an "affirmative duty" to proceed deliberately with investigation and findings, a principle with which I agree, it does not suggest that the Administrator's action is nondiscretionary. To the contrary, it suggests discretion in the length and scope of investigations, and in the decision when to make a finding of violation.

For these reasons, I conclude that the Administrator's duty to make a finding of a violation of the CWA is discretionary. The Eighth Circuit has reached the same conclusion on the Administrator's discretionary responsibilities to investigate and make findings of violations. *See Dubois v. Thomas,* 820 F.2d 943, 947 (8th Cir.1987). No finding of violation was alleged in the complaint here, and so far as I can determine from the record none has yet been made.[1] On this ground, the district court properly dismissed the Sierra Club's claim.

In view of the broader issues reached by the majority, it is appropriate for me further to explicate my views. If the Administrator had made a finding of a violation, we then would be faced squarely with the question whether the facially mandatory "shall" directives of § 1319(a)(3) create nondiscretionary enforcement duties of the Administrator to issue an order requiring compliance or to bring a civil action. But under the plain language of the statute, one need not grapple with whether the "shall" language creates a nondiscretionary duty of the Administrator unless and until the Administrator finds a violation of the CWA. One need not grapple with whether *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and its predecessor cases asserting similar doctrine, render a duty of enforcement discretionary to the EPA as the responsible agency. One need not grapple with whether a normal presumption of agency enforcement discretion under *Heckler* is here rebutted by congressional intent to avoid and clean up pollution and to authorize citizen suits as a means to that end.

Because these issues are not of necessity presented by this case, I would affirm without addressing them, even though the inaction of the Administrator in the face of sustained reports disclosing continuing pollution is troubling. Nonetheless, in my view, there can be no doubt that Congress has given the Administrator discretion to find a violation or not to do so. No prior finding of violation was alleged here by the Sierra Club in its complaint, and the

---

1. I do not have occasion in this case to consider whether actions of the Administrator short of an express finding might ever be tantamount to a finding for purposes of assessing the Administrator's enforcement obligations. Nor do I have occasion to assess whether any form of legal action other than a citizen suit under the CWA might be used to seek a court order requiring enforcement action from the Administrator.

record does not disclose such a finding. Under these circumstances, a citizen suit cannot properly be asserted against the Administrator at this stage because a non-discretionary duty is not presented; the discretionary finding of violation is a necessary preliminary condition to an agency enforcement action.