RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0358p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

OHIO PUBLIC INTEREST RESEARCH GROUP, INC.; GLENN
LANDERS,

*Petitioners,*

*v.*

CHRISTINE TODD WHITMAN, Administrator of the United
States Environmental Protection Agency; UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents,*

STATE OF OHIO,

*Intervenor.*

Nos. 02-3805/4116

On Petition for Review of a Final Decision of the Environmental Protection Agency.
No. A-18J.

Argued: April 29, 2004

Decided and Filed: October 21, 2004

Before: SUHRHEINRICH, BATCHELDER, and COLE, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Keri N. Powell, EARTHJUSTICE LEGAL DEFENSE FUND, Washington, D.C., for
Petitioners. David S. Gualtieri, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondents. **ON BRIEF:** Keri N. Powell, EARTHJUSTICE LEGAL DEFENSE FUND, Washington,
D.C., for Petitioners. David S. Gualtieri, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., Kerry E. Rodgers, U.S. ENVIRONMENTAL PROTECTION AGENCY, OFFICE OF THE
GENERAL COUNSEL, Washington, D.C., for Respondents. Douglas A. Curran, J. Randall Engwert,
OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Intervenor.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Petitioner-Appellant Ohio Public Interest Research Group
("Ohio PIRG") seeks review of the Environmental Protection Agency's ("EPA") decision not to issue a

1

notice of deficiency to the Ohio Environmental Protection Agency ("OEPA") in response to Ohio PIRG's comments concerning the OEPA's implementation of Title V of the Clean Air Act, 42 U.S.C. §§ 7661 – 7661f ("CAA" or "the Act"). Ohio PIRG appeals: (1) the EPA's decision not to issue a notice of deficiency to the OEPA; and (2) the EPA's interpretation of § 502(b)(10) of the CAA. 42 U.S.C. § 7661a(b)(10). For the reasons below, we **DENY** Ohio PIRG's petition for review of the EPA's refusal to issue a notice of deficiency, and **DENY** its challenge to the EPA's interpretation of § 502(b)(10) as untimely.

## I. BACKGROUND

### A. The Clean Air Act

The central purpose of the Clean Air Act, 42 U.S.C. §§ 7401-7671q, enacted in 1970 and amended in 1977 and 1990, is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). States and local governments bear "primary responsibility" for preventing and controlling air pollution at its source. 42 U.S.C. § 7401(a)(3). States carry out this responsibility through state implementation plans ("SIPs"), subject to EPA approval, implementing, maintaining and enforcing the National Ambient Air Quality Standards ("NAAQS") established by the EPA. 42 U.S.C. §§ 7409(a), (b), 7410(a). Since 1990, the Act has authorized an operating permits program – known as a Title V permit program – to enable states, with EPA oversight, to better ensure that major sources of air pollution comply with SIPs and other requirements under the Act.

### B. The Title V Permitting Program

Title V, enacted as part of the 1990 Amendments, requires those who operate major stationary sources of air pollution to obtain operating permits, and establishes a procedure for federal authorization of state-run programs. 42 U.S.C. §§ 7661a(a), 7661c(a); 40 C.F.R. §§ 70.3, 70.6(a)(1). Title V does not impose new obligations; rather, it consolidates pre-existing requirements into a single, comprehensive document for each source, which requires monitoring, record-keeping, and reporting of the source's compliance with the Act. *See* 42 U.S.C. §§ 7661c(a), (c); 40 C.F.R. §§ 70.6(a)(3), (c)(1). Sources subject to Title V may not operate without, or in violation of, an operating permit. 42 U.S.C. § 7661a(a).

The Act directs the EPA to promulgate regulations establishing minimum elements of a Title V program. 42 U.S.C. § 7661a(b). The EPA's Title V regulations were finalized in 1992 and are codified at 40 C.F.R. § 70. Each state is required to develop, and submit for EPA approval, an operating permit program that meets the requirements of Title V and Part 70. 42 U.S.C. § 7661a(d)(1). After the EPA approves a state's Title V permitting program, the Act authorizes the EPA to monitor whether the state is adequately administering and enforcing it. Pursuant to § 502(i) of the CAA:

> [w]henever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof . . . , the Administrator shall provide notice to the State.

42 U.S.C. § 7661a(i)(2). This notice, known as a "notice of deficiency" (NOD), must be published in the Federal Register. 40 C.F.R. § 70.10(b)(10).

If the EPA determines that a state is not administering or enforcing its Title V program adequately, it is authorized to sanction the state if the deficiencies are not corrected within eighteen months after the issuance of the NOD. 42 U.S.C. § 7661a(i)(1)-(2). Possible sanctions include the loss of federal highway funds and the application of strict emissions offset requirements for new sources in certain areas within the state. 42 U.S.C. § 7509(b)(1)-(2). If the deficiencies are not corrected within eighteen months, the EPA itself must "promulgate, administer, and enforce" a federal operating permit program. 42 U.S.C. § 7661a(i)(4); 40 C.F.R. § 70.10(b)(4).

The EPA granted final full approval to Ohio's Title V program effective in October 1995. 60 Fed. Reg. 42,045 (August 15, 1995). Ohio's program is codified at Chapter 3745-77 of the Ohio Administrative Code and is administered by the OEPA

## C. The EPA's Consideration of Public Comments on Ohio's Title V Program

In late 2000, in connection with a settlement agreement in *Sierra Club v. EPA*, No. 11-1262 (D.C. Cir. 2000), the EPA invited members of the public to submit comments identifying deficiencies in the administration of Title V programs throughout the United States. 65 Fed. Reg. 77,376 (December 11, 2000). The EPA stated that after considering public comments, it would "issue a [NOD] for any claimed shortcoming in an operating permits program that [the EPA agrees] constitutes a deficiency within the meaning of part 70." *Id.* at 77,377. The EPA also agreed to identify alleged problems that the EPA did not believe to be deficiencies.

On March 10, 2001, pursuant to the EPA's notice, Ohio PIRG submitted comments addressing Ohio's Title V program. The comments alleged eleven areas in which Ohio PIRG believed a NOD was warranted, only four of which are at issue on appeal.

In response to Ohio PIRG's comments, the EPA initiated correspondence with the OEPA regarding the alleged deficiencies Ohio PIRG had identified, and in November 2001, sent the OEPA a letter identifying issues on which the OEPA would need to take action in order to avoid the issuance of a NOD. The OEPA responded by committing in writing to address several of the EPA's concerns.

On April 8, 2002, the EPA issued a NOD with regard to one of the issues identified by Ohio PIRG's comments. 67 Fed. Reg. 19,175. However, in a letter dated May 22, 2002, as to Ohio PIRG's other allegations, the EPA informed Ohio PIRG that none of its remaining allegations of deficiency warranted the issuance of a NOD.

## II. DISCUSSION

## A. Standard of Review

We review the EPA's actions pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; *see also Greenpeace, Inc. v. Waste Techs. Indus.*, 9 F.3d 1174, 1180 (6th Cir. 1993). Under the APA we must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When an agency has acted pursuant to its interpretation of its governing statute, we are required to determine whether the agency's interpretation is entitled to deference, and, if so, at what level. *See United States v. Mead Corp.*, 533 U.S. 218 (2001); *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

An agency's interpretation of its governing statute that contravenes Congress's unambiguously expressed intent is not entitled to judicial deference. *Chevron*, 467 U.S. at 842-43. When we are addressing the reasonableness of an agency's actions pursuant to its governing statute, the arbitrary and capricious standard of the APA governs our review. *See Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995).

## B. The EPA's Failure to Issue A Notice of Deficiency to The OEPA

Ohio PIRG asserts that the EPA arbitrarily and capriciously failed to issue a NOD to the OEPA, despite the fact that it confirmed that there were areas requiring correction in the OEPA program. Specifically, Ohio PIRG cites four areas where the EPA agreed that improvement was necessary but failed to issue a NOD to the OEPA; they are: (1) the OEPA's failure to abide by Title V reporting requirements with respect to deviations caused by malfunctions, 40 C.F.R. § 70.6(a)(iii)(B); (2) the OEPA's failure to issue all initial Title V operating permits within the three- year time period following its final approval by the EPA to administer its Title V program, § 42 U.S.C. § 7661b(c); (3) the OEPA's failure to prepare a

lawful "statement of basis" to accompany each draft Title V permit, 40 C.F.R. § 70.7(a)(5); and (4) the failure of the OEPA to abide by Title V's requirement that any facility subject to its permitting requirements must apply for a permit revision before making a "modification[] under any provision of subchapter I [of the Act]," 42 U.S.C. § 7661a(b)(10).

Ohio PIRG contends that § 502(i)(1) unambiguously requires the EPA to issue a NOD whenever the EPA has determined that the OEPA was inadequately administering its Title V requirements. Section 502(i)(1) states: "Whenever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof, in accordance with the requirements of this subchapter, the Administrator shall provide notice to the State[.]" 42 U.S.C. § 7661a(i)(1). Ohio PIRG contends that the word "shall" is mandatory, and not permissive, requiring the EPA to issue a NOD when inadequacies are found, as they have been in this case.

The EPA does not dispute the deficiencies cited by Ohio PIRG. However, the EPA contends that its recognition of such deficiencies does not constitute determinations that Ohio was not "adequately administering and enforcing" its Title V program. Further, and more importantly, the EPA contends that it has discretion under the CAA to determine whether Ohio is not "adequately administering and enforcing" its Title V program. In other words, the EPA argues that the Act gives it discretion about whether to initiate its formal enforcement authority, which would be the result of the issuance of a NOD.

Although Ohio PIRG focuses its argument on the obligatory "shall," the EPA contends that the preceding phrase – "Whenever the Administrator makes a determination . . ." – gives it the discretion to make the determination that triggers the statute's obligatory language. The EPA's argument is supported by decisions from two of our sister circuits.

In *New York Public Interest Research Group v. Whitman*, 321 F.3d 316 (2d Cir. 2003), the court addressed a challenge to the EPA's failure to issue a NOD to the state of New York regarding certain inadequacies that it had confirmed in its Title V program. There, the court rejected NYPIRG's contention that § 502(i)(1) imposed a non-discretionary duty on the EPA to issue a NOD where it had confirmed certain inadequacies in New York's Title V program. The court stated:

> NYPIRG maintains that because Congress instructed in § 502(i) that whenever deficiencies exist "the Administrator shall provide notice [of deficiencies]," the EPA has no discretion. But NYPIRG's fixation on this phrase glosses over the rest of the provision and, in so doing, misreads it. As the EPA correctly notes, the key phrase of § 502(i)(1) is the opening one, "Whenever the Administrator makes a determination," and this language grants discretion. . . Because the determination is to occur whenever the EPA makes it, the determination is necessarily discretionary. . . Accordingly, we conclude that § 502(i) affords the EPA discretion whether to make a determination that a state permitting authority is not adequately administering and enforcing its permitting program. Once that determination is made, certain statutorily mandated consequences, including the issuance of a notice, follow; but the decision whether to make that determination as an initial matter is a discretionary one.

*Id*. at 330-31. (alteration in original) (internal citations omitted).

The *NYPIRG* court concluded that the EPA's decision not to issue a NOD was synonymous with "an agency's decision not to invoke an enforcement mechanism provided by the statute." *Id.* at 332. *See also Public Citizen, Inc. v. EPA*, 343 F.3d 449, 464 (5th Cir. 2003).

Pursuant to § 701(a)(2) of the APA, an administrative agency's decision not to invoke an enforcement mechanism is not subject to judicial review. That is, where the statute provides no meaningful standard against which a court can judge an agency's action, such action is unreviewable. In *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." There, the

Supreme Court reasoned that a presumption against reviewability was supported by what it deemed to be "the general unsuitability for judicial review of agency decisions to refuse enforcement." *Id*. at 831. The Supreme Court gave three substantive reasons for the unsuitability of judicial review of an agency's decision not to initiate enforcement proceedings:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake action at all. . . The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of priorities. . . In addition to these administrative concerns, we note that when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty upon areas that courts often are called upon to protect. . . Finally, we recognize that an agency's refusal to initiate proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict – a decision which has long been regarded as the special province of the Executive Branch[.]

*Id*. at 831-32. (emphasis in original).

In addition to *Heckler*, there are several cases that support the conclusion that the language of § 502(i)(1) endows the EPA with discretion about the use of its enforcement authority. For example, in *Sierra Club v. Whitman*, 268 F.3d 898, 900-03 (9th Cir. 2001), the court rejected the Sierra Club's argument that § 1319(a)(3) of the Clean Water Act – which provides that "[w]henever on the basis of any information available to him the Administrator finds" a violation of certain sections of the CWA, the Administrator "shall issue an order requiring such person to comply" with the statute or "shall bring a civil action" for an appropriate remedy – imposed an obligation on the EPA to make findings when provided with information suggesting a violation.

Likewise, in *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1527-28 (D.C. Cir. 1990), the court interpreted § 115(a) of the CAA – which provides that "[w]henever the Administrator, upon receipt of reports, surveys or studies from any duly constituted international agency has reason to believe that any air pollutant or pollutants emitted in the United States cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare in a foreign country . . . the Administrator shall give formal notification thereof to the Governor of the State in which such emissions originate" – to grant discretionary enforcement authority to the EPA. 42 U.S.C. § 7415(a). The court stated, "The words 'whenever' the Administrator 'has reason to believe' imply a degree of discretion underlying the endangerment finding. Once that finding is made, however, the remedial action that follows is both specific and mandatory[.]" *Id*. at 1533.

Although the Supreme Court held that enforcement decisions are presumptively unreviewable, it noted that "the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Heckler*, 470 U.S. at 832-33. "If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2), and courts may require that the agency follow that law; if [Congress] has not, then an agency's refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of that section." *Id*. at 834-35.

Ohio PIRG contends that even if this court concludes that the EPA's action pursuant to § 502(i)(1) constitutes enforcement within the meaning of *Heckler*, the presumption of unreviewability is nonetheless rebutted because "the CAA provides very specific guidance for the EPA to follow in exercising its oversight of state implementation of permitting requirements." (Appellants' Brief at 47). Ohio PIRG contends that

the CAA gives specific guidance regarding what constitutes inadequate administration of Title V requirements. The CAA, however, only provides guidance regarding what is required *after* a determination of inadequacy is made; it does not give guidance on what ought to be considered an inadequacy, or when the EPA should "make a determination" of inadequacy leading to the issuance of a NOD. Ohio PIRG points to no specific statutory language that rebuts the presumption that the EPA has discretion to determine whether the OEPA is administering its Title V permit program adequately. Despite the fact that the Act imposes certain requirements on a state's implementation of its permit program – at least four areas in which Ohio is falling short – the statute does not mandate that where there are confirmed areas of needed improvement a NOD must issue. It would effect a considerable strain on the EPA to demand that it initiate its full enforcement authority every time it noted areas that required improvement. Such a requirement might have the perverse effect of forcing the EPA to remain silent about areas where improvement was needed in a state's Title V program, lest it risk having to assume full responsibility for state environmental programs, even for the slightest infractions.

Finally, in *Public Citizens*, 343 F.3d at 464-65, the Fifth Circuit, in a case nearly identical to ours, concluded that "the only limitation on the EPA's power [to enforce Title V regulations], contained in § 502(i) . . . is that it must issue [a] NOD when it determines a program is being inadequately administered. Here, the EPA has concluded to the contrary, leaving us nothing to review."

We are unable to review the EPA's refusal to issue a NOD, as the determination upon which its issuance hinges is committed to agency discretion by law, and the Act leaves us with no standards by which to judge the EPA's non-enforcement decision.    Accordingly, Ohio PIRG's petition for review is denied.

## C. The EPA's Interpretation of § 502(b)(10)

Ohio PIRG also challenges the EPA's interpretation of § 502(b)(10) of the Act. According to Ohio PIRG, § 510(b)(10) requires a facility subject to Title V permitting requirements to apply for a permit revision before making any "modification[] under any provision of subchapter I [of the Act]." 42 U.S.C. § 7661a(b)(10). The EPA, on the other hand, has interpreted § 502(b)(10) to exclude minor changes from the meaning of "Title I modification," such that any permitted facility that makes such changes is not required to apply for a preconstruction permit revision. Ohio PIRG contends that EPA and OEPA regulations wrongly exclude any modifications that fall under CAA § 110(a)(2)(C) from its definition of a modification under Title I of the Act.

The EPA argues that we are without jurisdiction to hear this matter, as Ohio PIRG's challenge was not timely filed. Section 307(b)(1) of the CAA requires that petitions for review of the EPA's actions under the Act must be filed within sixty days from the date that notice of the challenged "promulgation, approval, or action appears in the Federal Register." 42 U.S.C. § 7607(b)(1). The EPA contends that Ohio PIRG seeks to challenge regulations that were promulgated at least as late as 1995, and that Ohio PIRG's challenge was made long past the sixty-day filing period. "Nevertheless, the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection." *Id.* (internal quotations omitted).

Ohio PIRG argues that the EPA's solicitation of public comments regarding the Title V program nationally started a new clock for parties to challenge its regulations beyond the initial, sixty-day limitations period. We disagree.

In the EPA's request for public comment, it specifically announced that it sought to address concerns that it had failed to timely respond to previous petitions requesting it to correct deficiencies in state Title V programs. Specifically, the request for comment states:

> [W]e are announcing in this notice that the public may submit comments within the 90-day comment period being provided requesting us to take action consistent with the procedures in sections 70.4(i) and 70.10(b). We are further announcing that we will respond by specific

dates to those comments and any petitions that have previously been submitted and will take action under sections 70.4(i) and 70.10(b), requiring permitting authorities to correct any program or implementation deficiencies. . . With respect to program deficiencies, please note the specific provisions of concern in the permitting authority's regulations or the State statute and identify the provision or provisions in part 70 or title V with which the program conflicts. For implementation deficiencies, identify the relevant regulatory or statutory provision that is not being properly implemented and provide the bases for the claim that the permitting authority is not properly implementing that portion of the program.

65 Fed. Reg. 77,376 (Dec. 11, 2000).

In *Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988), the D.C. Circuit held that where an agency had republished its rules in a proposed regulation, offered an explanation for its language, solicited comments on its substance, and responded to comments in promulgating final rules, it had "create[d] the opportunity for renewed comment and objection." *See also Edison Elec.*, 996 F.2d at 332 (holding that where the EPA had solicited comments on its existing regulations, and advanced a possible "alternative approach" in its proposal, it had reopened the notice and comment period); *Public Citizen v. NRC*, 901 F.2d 147, 152 (D.C. Cir. 1990) (holding that the Nuclear Regulatory Commission had reopened the notice and comment period where it "reconsidered [] the wisdom of its earlier, final rulemaking, it had "reconsidered and reinstated its original policy," thereby creating the opportunity for renewed comment); *Assoc. of Amer. Railroads v. ICC*, 846 F.2d 1465, 1473 (D.C. Cir. 1988) (holding that the Interstate Commerce Commission had reopened the notice and comment period where it had "alluded to its intention to 'harmonize [its prior] decisions,' possibly suggesting that the search for harmony might lead to a rethinking of old positions.") (emphasis removed) (internal citation omitted).

With respect to the request for comments before us, there is no indication that the EPA was reconsidering any underlying regulations. It merely sought public comment on whether state Title V programs were acting in accordance with those regulations, including its interpretation of § 502(b)(10) of the CAA. Our case differs from these cases because here the EPA has not "created the opportunity for renewed comment and objection." Our case most closely resembles *American Iron and Steel Institute v. EPA*, 886 F.2d 390, 397-98 (D.C. Cir. 1989), which held that despite the fact that the EPA had "mentioned its treatment of post-closure permits and permits by rule in the preamble of its" proposed regulation, "nowhere . . . does the EPA reopen the question of *whether* permits by rule or post-closure permits should be treated as RCRA permits." (emphasis in original). *See also Safe Food and Fertilizer v. EPA*, 350 F.3d 1263, 1267-68 (D.C. Cir. 2003) (holding that the EPA had not reopened the notice and comment period on a prior regulation where "petitioners failed to show that the EPA reconsidered" its previous regulation).

We conclude that the EPA's request for comments regarding state Title V programs did not signal its reconsideration of its previous rule interpreting § 502(b)(10) of the CAA, and thereby did not reopen the sixty-day notice and comment period. Accordingly, we deny Ohio PIRG's petition for review as time-barred.

### III. CONCLUSION

For the reasons stated above, we **DENY** Ohio PIRG's petition to review the EPA's refusal to issue a NOD. We also **DENY** Ohio PIRG's challenge to the EPA's interpretation of § 502(b)(10) of the CAA as untimely.