**COLORADO WILD, INCORPORATED,**
Plaintiffs,

v.

**UNITED STATES FOREST SERVICE; and Daniel Glickman, in his official capacity as Secretary of Agriculture of the United States, Defendants.**

and

**Dundee Realty, USA, Inc., Defendant–Intervenor.**

No. CIV.A. 00–WY–697–CB.

United States District Court,
D. Colorado.

Nov. 30, 2000.

Robert Baxter Wiygul, Susan Diane Daggett, Earthjustice Legal Defense Fund, Inc., Denver, CO, for Plaintiff.

Peter J. Krumholz, United States Attorney's Office, Civil Division, David A. Carson, U.S. Department of Justice, Environment & Natural Resources Division, Denver, CO, for Defendants.

Harris D. Sherman, Ezekiel J. Williams, Arnold & Porter, Denver, CO, for Intervenor–Defendant.

## ORDER

BRIMMER, District Judge.

This matter comes before the Court on Defendants' Partial Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6). Defendant–Intervenor Dundee Realty, USA, Inc. ("Dundee") has subsequently joined in the partial motion to dismiss. After reading the briefs, hearing oral arguments, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff Colorado Wild, Incorporated ("Colorado Wild") brings suit alleging violations of various federal statutes. Plaintiff asserts this Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201–2202, and 5 U.S.C. §§ 704, 552. Venue is proper in this Court.

### Background

Colorado Wild challenges the Forest Service's November 10, 1999 approval of a Master Development Plan ("Plan") for Arapahoe Basin Ski Area located in the White River National Forest near Dillon, Colorado. This Plan would allow Dundee, the operator of the ski area, to increase its artificial snowmaking operations by diverting water from a tributary of the Snake River. This tributary is a relatively clean water source which helps to dilute the concentration of toxic metals found in the Snake River. Colorado Wild asserts that Dundee's withdrawal of water from the North Fork would increase the concentration of pollutants in the Snake River, thereby exacerbating the Snake River's water quality problems.

Plaintiff has unsuccessfully exhausted its administrative remedies and now brings suit to challenge the Forest Service's approval of the Plan alleging three causes of action: (1) violation of the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*, and its implementing regulations; (2) violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*; and (3) violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* Defendants now move to dismiss Plaintiff's first two causes of action pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

### Standard of Review

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(1) or (6), a court must accept the plaintiff's allegations as true and must "consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be

granted." *Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y,* 163 F.3d 1150, 1152 (10th Cir.1998) (citation omitted).

### Analysis

Defendants claim that Plaintiff's NFMA claim should be dismissed under Fed. R.Civ.P. 12(b)(6) for a failure to state a claim upon which relief can be granted. Next, Defendants assert that Plaintiff's CWA claim should be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or under Fed.R.Civ.P. 12(b)(6) for a failure to state a claim upon which relief can be granted. While accepting the allegations contained in Plaintiff's complaint as true, the Court will address Defendants' motion as it pertains to each of Plaintiff's causes of action.

### A. NFMA Claim

■ In its first cause of action, Plaintiff alleges that the Forest Service violated 16 U.S.C. § 1604(i), as well as 36 C.F.R. §§ 219.10(e) and 251.56(a)(1)(i)(C). In particular, Plaintiff complains that the Forest Service failed to require the maintenance of Colorado water quality standards in the Snake River, thereby violating 16 U.S.C. § 1604(i) and 36 C.F.R. § 219.10(e). Plaintiff also complains that the Forest Service failed to abide by its own regulations that require observance of applicable state water quality standards in violation of 36 C.F.R. § 251.56(a)(1)(i)(C). Defendants challenge this cause of action, contending that Colorado law does not regulate water quality with respect to withdrawals of water that do not involve a discharge or runoff of pollutants. Defendants assert that Plaintiff has failed to allege a discharge of runoff of pollutants and therefore cannot state a claim upon which relief can be granted.

Under NFMA, the Forest Service must ensure that all activities it allows on National Forest comply with state water quality standards. *See* 16 U.S.C. § 1604(i) (requiring that activities permitted on the National Forest be consistent with land management plans which, in this case, require compliance with state water quality standards); 36 C.F.R. § 219.10(e) (similar); 36 C.F.R. § 251.56(a)(1)(i)(C) (requiring compliance with applicable federal or state water quality standards). In addition, the Forest Service must also ensure compliance with the CWA. 36 C.F.R. § 219.23(d). Plaintiff's ability to state a claim upon which relief can be granted therefore depends on whether a violation of Colorado water quality standards or the CWA can be shown.

### 1. Colorado water quality standards

■ Colorado regulates water quality and water quantity through two separate entities. *City of Thornton v. Bijou Irr. Co.,* 926 P.2d 1, 91 (Colo.1996). Water quality is the province of the Colorado Water Quality Control Commission and the Water Quality Division ("Water Quality Agencies") which were created by the Colorado Water Quality Control Act, Colo. Rev.Stat. § 25–8–101 *et seq. Id.* Water quantity, on the other hand, is governed by a prior appropriation system regulated by the judiciary and the water court. *Id.* "[T]he system of water quality regulation in Colorado reflects a continued conflict with and subordination to the prior appropriation system." *Id.* The Colorado legislature has "made clear its intention that [the Water Quality Agencies'] authority cannot be exercised in a manner that significantly compromises the appropriative rights of present or future water users." *Id.* at 92. The legislature's policy decision in this regard "focus[es] water quality regulation on uses culminating in unreasonable discharges." *Id.* Therefore, water quality impacts arising from the diversion of water rather than the discharge of pollutants does not implicate Colorado water quality statutes. *See id.* ("The plight of [those] who allege quality impacts as a result of appropriative depletion rather than substandard discharge or supply water, is a prime example of the limitations of

the present system to provide remedies for all types of injuries.").

The Colorado Water Quality Control Act is specifically aimed at regulating the discharge of pollution. *See* Colo.Rev.Stat. § 25–8–103(4) ("This article ... shall be the final authority in the administration of water pollution prevention, abatement, and control.... [N]o department or agency of the state ... shall issue any authorization for the discharge of pollutants into state waters unless authorized to do so in accordance with this article."). There is no similarly expressed power to regulate water quality by means of controlling the appropriation of water. *See* Colo.Rev.Stat. § 25–8–104(1) ("No provision of this article shall be interpreted so as to supersede, abrogate, or impair rights to divert water and apply water to beneficial uses in accordance with [Colorado law].").

The Colorado Supreme Court's analysis of the relationship between Colorado's regulation of water quality and water quantity, along with the provisions of the Colorado statutes, leads this Court to believe that, under Colorado law, water quality standards apply only to discharges of pollution and not to withdrawals or appropriations of water. As a result, Plaintiff's complaint, which rests solely upon the allegation that withdrawals of water from the North Fork will increase the pollution concentrations in the Snake River, fails to show any violation of Colorado state water quality standards.

### 2. CWA

Plaintiff may also demonstrate a violation of NFMA by showing a failure to comply with the CWA. "The CWA aims 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters' by reducing and eventually eliminating the discharge of pollutants." *Maier v. E.P.A.*, 114 F.3d 1032, 1034 (10th Cir. 1997) (citing 33 U.S.C. § 1251(a), (a)(1)). The CWA attempts to achieve its goals by creating distinct roles for the federal and state governments. *PUD No. 1 v. Wash-ington Dept. of Ecology*, 511 U.S. 700, 704, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994). The Administrator of the Environmental Protection Agency ("EPA") regulates point source discharges of pollutants into navigable waters while the states, subject to federal approval, institute water quality standards for intrastate waters. *Id.* The withdrawal of water is not a discharge of pollution under the CWA. *See North Carolina v. Fed. Energy Regulatory Comm'n*, 112 F.3d 1175, 1187 (D.C.Cir.1997). The CWA does not impair the "authority of each state to allocate quantities of water within its jurisdiction." 33 U.S.C. § 1251(g).

Defendants assert that the CWA does not regulate water quality impacts arising from the diversion of water. Plaintiff contends that *PUD No. 1*, requires the Court to reject Defendants' assertion. In *PUD No. 1*, the Court upheld a state's imposition of a minimum flow requirement as a condition to receiving a § 401 certification under the CWA. 511 U.S. at 723, 114 S.Ct. 1900. In so doing, the Court addressed the argument that "the Clean Water Act is only concerned with water quality, and does not allow the regulation of water quantity." *Id.* at 719, 114 S.Ct. 1900. The Court found that this was an "artificial distinction" and-stated that water quantity is closely related to water quality. *Id.* (noting that the CWA recognizes that reduced stream flow can constitute water pollution). However, the Court made these observations while upholding a state's ability to impose minimum stream flow requirements under the CWA. *Id.* at 723, 114 S.Ct. 1900 (noting that state water quality standards may impose more stringent water quality controls). Therefore, while *PUD No. 1* upholds a state's right to impose minimum stream flow requirements, it does not contend that such requirements are mandated by the CWA itself. Therefore *PUD No. 1* does not control the Court's disposition of Defendants' argument in this case.

Here, Plaintiff complains that the Forest Service's approval of the Plan allows a withdrawal of water which will increase the concentration of pollution in the Snake River. However, as pointed out above, the withdrawal of water is not a discharge of pollution. Therefore, Plaintiff is unable to show that the Forest Service's approval of the Plan allowing a withdrawal of water violated the CWA.

The Court finds that Plaintiff is unable to show a violation of NFMA. Therefore, even accepting Plaintiff's allegations as true, Plaintiff's first cause of action is not legally sufficient to state a claim upon which relief may be granted.

## B. CWA Section 313 Claim

In its second cause of action, Plaintiff alleges that the Forest Service violated 33 U.S.C. § 1323 ("Section 313 of the CWA"). Defendants attack this allegation contending that Section 313 does not waive the United States' sovereign immunity in this case, thereby depriving this Court of subject matter jurisdiction. Defendants alternatively assert that Plaintiff fails to state a claim upon which relief can be granted under the CWA. The Court will address Defendants' subject matter jurisdiction argument first.

### 1. Subject Matter Jurisdiction

■ "The United States, as sovereign, is immune from suit in the absence of its consent." *Sierra Club v. Lujan,* 972 F.2d 312, 314 (10th Cir.1992). "A waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed by Congress." *Id.* (quotations and citations omitted). "Waivers of immunity must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (quotations and citations omitted).

Plaintiff asserts that Section 313 of the CWA waives the United States' sovereign

immunity in this case. Section 313 provides:

> Each ... instrumentality of the ... Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements ... respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity ....

33 U.S.C. § 1323(a). The Court believes that this section fails to waive the sovereign immunity in this case for two separate reasons.

■ First, the language of Section 313 appears to be limited to requiring a federal facility to comply with pollution control measures in the same fashion as a nongovernmental entity. Cases interpreting this section have addressed the issue of whether sovereign immunity was waived in cases involving the operation of federal facilities. *See United States Dep't of Energy v. Ohio,* 503 U.S. at 612, 112 S.Ct. 1627 (alleging violations of CWA arising from the operation of a uranium processing plant); *Lujan,* 972 F.2d at 316 (alleging violations of CWA arising from operation of a mine drainage tunnel); *Metro. Sanitary Dist. v. United States Dep't of Navy,* 722 F.Supp. 1565, 1567 (N.D.Ill.1989) (alleging the United States Department of the Navy failed to comply with the terms of its sewage discharge permit). In fact, Section 313 is entitled "Federal facilities pollution control." 33 U.S.C. § 1323. Plaintiff fails to cite any cases to support its proposition that this section also waives the United States sovereign immunity for failing to ensure compliance with Colorado water quality standards. Section 313 merely ensures that the federal government's "property or facility" or "activity resulting ... in the discharge ... of pollutants" comply with water pollution regulations just as any "nongovernmental entity." 33 U.S.C. § 1323. Here, there is neither a federal facility, nor a federal activity resulting in

the discharge of pollutants which invokes Section 313. Therefore, the Court feels that waiving sovereign immunity in this case where the only alleged action involves the approval of a Master Development Plan would improperly enlarge the waiver of sovereign immunity beyond what Section 313 requires. *See United States Dep't of Energy v. Ohio*, 503 U.S. at 615, 112 S.Ct. 1627.

Second, even if Section 313 does waive sovereign immunity for an agency's failure to ensure compliance with state water quality standards, there is no such failure in this case. As stated above, neither the state of Colorado, nor the CWA regulate the water quality effects of water diversions. Therefore, Defendant Forest Service could not be guilty of failing to require compliance with state water quality standards of a property within its jurisdiction. As a result, there is no violation of Section 313.

Plaintiff cites *Lujan*, 972 F.2d 312 to contend that Section 313 waives sovereign immunity for violations of various CWA requirements. In *Lujan*, the Sierra Club and Colorado Environmental Coalition ("Sierra Club"), filed a citizen suit under Section 505(a) of the CWA, seeking declaratory relief and civil penalties against the United States Department of the Interior ("DOI") and the Bureau of Reclamation ("BuRec") for past violations of the CWA. *Lujan*, 972 F.2d at 313. There the Department of the Interior and the Bureau of Reclamation owned and operated a mine drainage tunnel. *Id.* The Sierra Club filed suit alleging that the DOI and BuRec had violated certain effluent limitations. *Id.* The court "[held] that Congress has not waived the United States' sovereign immunity and authorized the imposition of punitive civil penalties against the federal appellants for past violations of the Clean Water Act." *Id.* at 316. The *Lujan* case only addressed the narrow question of whether Section 313 waives sovereign immunity in cases involving punitive damages

for past violations of the CWA by agencies who were operating a federal facility. *Lujan* does not address the broader issue of whether sovereign immunity is waived where the federal agency is not itself the polluter in violation of the CWA.

Plaintiff therefore fails to show that Section 313 waives the United States' sovereign immunity in this case. Therefore Plaintiff's second cause of action must be dismissed.[1]

### *Conclusion*

Plaintiff fails to state a claim upon which relief can be granted under the National Forest Management Act. Plaintiff also fails to show that the United States' sovereign immunity is waived by Section 313 of the CWA. Therefore, it is **HEREBY ORDERED** that Defendants' Partial Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6) is **GRANTED**. Plaintiff's First Cause of Action alleging violations of the National Forest Management Act is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Second Cause of Action alleging violations of Clean Water Act Section 313 is **DISMISSED WITH PREJUDICE**.

---

**1.** Accordingly, the Court need not address Defendants' assertion that Plaintiff's second

cause of action fails to state a claim upon which relief can be granted.