**CITY OF OLMSTED FALLS, et al., Plaintiffs,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**No. 1:02 CV 1460.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 25, 2002.

Barbara E. Lichman, Berne C. Hart, Jacqueline E. Serrao, Chevalier, Allen & Lichman, LLP, Irvine, CA, Kevin T. Roberts, Roberts Law Firm, Cleveland, OH, for plaintiffs.

Andrew J. Doyle, U.S. Dept. of Justice, Environment & Natural Resources Division, Washington, DC, Steven J. Paffilas, U.S. Attorney's Office, Cleveland, OH, for defendants U.S. Environmental Protection Agency, Christie Todd Whitman, Thomas Skinner, U.S. Dept. of the Army, Thomas E. White, Army Corps of Engineers, Glen R. DeWillie, U.S. Dept. of Transportation, Norman Y. Mineta, Federal Aviation Administration, and Jane Garvey.

Julianne Kurdila, Thomas L. Anastos, City of Cleveland, Dept. of Law, Cleveland, OH, for defendants City of Cleveland and Jane L. Campbell.

Margaret A. Malone, David Kern, Office of Attorney General, Environmental Enforcement Section, Columbus, OH, for defendants State of Ohio, Robert A. Taft, Ohio Environmental Protection Agency, and Christopher Jones.

*Memorandum of Opinion and Order*

GAUGHAN, District Judge.

## INTRODUCTION

This matter is before the Court on Federal Defendants' Motion to Dismiss (Doc. 39). This case arises out of construction currently underway at the Cleveland Hopkins International Airport. Specifically, this case focuses on the "dredge or fill" permit issued under the Clean Water Act in conjunction with the construction.

## FACTS

### The Parties

Plaintiff, City of Olmsted Falls (hereafter "Olmsted Falls"), is a municipal corporation located near the Cleveland Hopkins International Airport (hereafter "Airport"). (Compl.¶ 3). Plaintiff, Marvin Hirschberg, is an individual resident of Olmsted Falls. (Compl.¶ 4).

Plaintiffs bring this action against eighteen defendants.

Defendant, United States Environmental Protection Agency (hereafter "USEPA"), is the federal agency responsible for oversight of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (commonly and hereafter referred to as "Clean Water Act"). (Comp.¶ 5). Defendant, Christine Todd Whitman, is the Administrator of the USEPA. (Compl.¶ 6). Defendant, Thomas Skinner, is the Regional Administrator of the USEPA.

(Compl.¶ 7). These three defendants are hereafter collectively referred to as the "USEPA Defendants."

Defendant, Department of the Army, is an agency of the federal government. (Compl.¶ 8). Defendant, Thomas E. White, is the Secretary of the Army. (Compl.¶ 9). Defendant, Department of the Army Corps of Engineers, is a federal agency responsible for regulating the discharge of dredged and fill material in navigable waters of the United States. (Compl.¶ 10). Defendant, Glen R. Dewillie, is the District Engineer for the Army Corps of Engineer's Buffalo District. These four defendants are hereafter collectively referred to as the "Corps Defendants."

Defendant, United States Department of Transportation, is the agency of the federal government responsible for the construction and operation of airports in the United States. (Compl.¶ 12). Defendant, Norman Y. Mineta, is the Secretary of the Department of Transportation. (Compl.¶ 13). Defendant, Federal Aviation Administration (hereafter "FAA") is the agency of the federal government responsible for safe air transportation. (Compl.¶ 14). Defendant, Jane Garvey, is the Administrator of the FAA. These four defendants are collectively referred to as the "FAA Defendants."

The USEPA Defendants and the Corps Defendants are collectively referred to as the "Federal Defendants."[1]

Defendant, City of Cleveland (hereafter "Cleveland"), is the owner and operator of the Airport. (Compl.¶ 17). Defendant, Jane L. Campbell, is the Mayor of Cleveland. (Compl.¶ 18). Defendant, State of Ohio, is a governmental entity charged with the enforcement of state water quality laws. (Compl.¶ 19). Defendant, Robert A. Taft, is the Governor of Ohio. (Compl.¶ 20). Defendant, Ohio Environmental Protection Agency (hereafter "OEPA"), is an agency of Ohio responsible for state certifications under the Clean Water Act. (Compl.¶ 21). Defendant, Christopher Jones, is the Director of the OEPA. (Compl.¶ 22). These six defendants are collectively referred to as the "State Defendants."

In addition to these seventeen defendants, plaintiffs name John Doe defendants.

**The Dispute**[2]

For the purpose of ruling on the Federal Defendants' Motion, the allegations in the Complaint are presumed true. Moreover, it appears from the briefs that the facts of this case are largely undisputed.

This dispute arises out of the ongoing construction at the Airport.

In March 1999, an Airport Master Plan (including an Airport Layout Plan) outlining the proposed expansion and redesign at the Airport was submitted to the FAA. (Compl.¶ 28). The Airport Layout Plan is a prerequisite to the receipt of federal funding for the Project. (Compl.¶ 28). Ultimately, the FAA approved the Airport project subject to securement of all required environmental permits. (Compl.¶¶ 27, 40).

Completion of the Airport project will result in the fill of 5,400 linear feet of Abram Creek and 2,500 linear feet of two it its tributaries.[3] (Compl.¶ 3).

---

1. This Court does not include the FAA Defendants in its definition of "Federal Defendants" because, as set forth below, the FAA Defendants have been dismissed from this case by plaintiffs.

2. For the sake of clarity and brevity, only those facts necessary for a disposition of the Federal Defendants' Motion are included in this Opinion.

3. Abram Creek runs through the Airport property and is connected through a water-

In approximately July 2000, Cleveland applied for a "dredge or fill permit" pursuant to § 404 of the Clean Water Act, 33 U.S.C. § 1344, (hereafter "Section 404 Permit"). (Compl.¶ 34). In addition, on October 30, 2000, Cleveland applied to the OEPA for state certification as required by § 401 of the Clean Water Act, 33 U.S.C. 1341 (hereafter "Section 401 Application").[4] (Compl.¶ 39).

Over the course of the next few months, OEPA issued a public notice concerning Cleveland's Section 401 Application, held a public hearing and accepted comments from the public to assist the Director of the OEPA in handling Cleveland's Section 401 Application. (Compl.¶¶ 45–47).

On April 13, 2002, the Director of the OEPA sent a letter to the Army Corps of Engineers indicating that Ohio waived its authority to act on the Section 401 Application. (Compl.¶ 50).

Thereafter, on May 18, 2001, the Army Corps of Engineers issued the Section 404 Permit to Cleveland. (Compl.¶ 51). Construction at the Airport began on May 20, 2001. (Compl.¶ 53).

On May 30, 2001, Olmsted Falls appealed the OEPA Director's decision to waive its authority to act on Cleveland's Section 401 Application. (Compl.¶ 54). On June 11, 2002, the Ohio Environmental Review Appeals Commission (hereafter "ERAC") ruled that the OEPA Director's "action" of waiving its authority to act on a Section 401 Application is not permitted under Ohio law. (Compl. ¶ 57; Compl. Ex. R). Instead, the ERAC determined that the OEPA Director must either certify or deny Section 401 applications. (Compl.Ex. R).

Olmsted Falls contacted the Federal Defendants requesting that the Section 404 Permit be revoked in light of the ERAC's ruling that the OEPA Director's "waiver" with regard to the Section 401 Application is invalid. (Compl.¶¶ 58, 62). The Federal Defendants refused. (Compl.¶ 63).

Thereafter, plaintiffs filed suit.

The Complaint asserts seven causes of action. In Count One plaintiffs assert a claim under the Clean Water Act against the USEPA Defendants and the Corps Defendants. Count Two asserts a claim under the Airports and Airways Improvement Act, 49 U.S.C. § 47106, against the FAA Defendants. Count Three asserts a claim for declaratory relief against all defendants. Count Four asserts a claim under the federal mandamus statute, 28 U.S.C. § 1361, against the Federal Defendants and the FAA Defendants. Count Five seeks preliminary and permanent injunctive relief against the Federal Defendants and the FAA Defendants. Count Six is a citizen's suit action under the Clean Water Act, 33 U.S.C. § 1365(a) against the USEPA Defendants. Finally, Count Seven seeks mandamus relief under Ohio Revised Code § 2731, et seq. against the State Defendants.

The Federal Defendants move to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Plaintiffs oppose the Federal Defendants' Motion with respect to the arguments raised by the USEPA Defendants and the Corps Defendants.[5]

---

shed to Busby Creek, which is located in Olmsted Falls. (Compl.¶ 3).

**4.** The requirements of § 401 must be satisfied prior to issuance of a Section 404 permit.

**5.** Plaintiffs affirmatively concede dismissal of Count Two in their brief in opposition. In addition, plaintiffs do not purport to respond to the Federal Defendants' Motion on behalf of the FAA Defendants. Accordingly, the FAA Defendants are hereby dismissed from this lawsuit.

## STANDARD OF REVIEW

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir.1986). This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The party need only show that the complaint alleges a substantial claim under federal law. *Id.*

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.* Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.* Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.* In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.Supp.2d 979, 982 (S.D.Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990)). Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D.Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248. Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University*, 2000 WL 1456988 *3 (S.D.Ohio Sept.27, 2000).[6]

## DISCUSSION

The Federal Defendants argue that this Court lacks subject matter jurisdiction to hear this case because the doctrine of sovereign immunity precludes plaintiffs from asserting claims against the Federal Defendants. Specifically, the Federal Defendants argue that plaintiffs' assertion of subject matter jurisdiction based on the federal question statute, 28 U.S.C. §§ 1331, the federal mandamus statute, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), do not contain statutory waivers of immunity. Accordingly, these statutes do not afford this Court with subject matter jurisdiction over the Federal Defendants. The Federal Defendants further argue that although the Clean Water Act and the Administrative Procedure Act, 5 U.S.C. §§ 701–706, contain statutory waivers of immunity, neither applies in this case.[7]

Plaintiffs implicitly concede that neither the federal question statute nor the Declaratory Judgment Act waives sovereign immunity. Plaintiffs, however, argue that the statutory waivers of immunity contained in the Clean Water Act and the Administrative Procedure Act apply to this case and afford this Court with subject

---

**6.** There is some dispute between the parties as to whether the Federal Defendants' challenge is a facial or factual attack on this Court's subject matter jurisdiction. This Court treats the Federal Defendants' Motion as a facial attack and, accordingly, considers only the allegations contained in plaintiffs' Complaint and the Exhibits attached thereto. See Fed. R. Civ. Pro. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").

**7.** The Federal Defendants also argue that the statutory waiver of immunity contained in the Airports and Airways Improvement Act is inapplicable. However, since plaintiffs concede this point, the Court need not address this argument.

matter jurisdiction over plaintiffs' claims. In addition, plaintiffs argue that the federal mandamus statute provides for judicial review in certain circumstances. Plaintiffs claim those circumstances are present in this case.

Accordingly, this Court will analyze whether an applicable waiver of sovereign immunity exists affording this Court with subject matter jurisdiction under either the Clean Water Act, the Administrative Procedure Act or the federal mandamus statute.

**The Clean Water Act**

The Federal Defendants argue that the only applicable statutory waiver of sovereign immunity in the Clean Water Act is the citizen suit provision, 33 U.S.C. § 1365(a)(2) (hereafter "Section 505(a)(2)"). Because plaintiffs failed to provide the requisite statutory notice, the Federal Defendants claim that this court lacks subject matter jurisdiction over plaintiffs' claims.

Plaintiffs concede that they failed to provide the proper statutory notice prior to filing a citizen's suit claim under the Clean Water Act. Plaintiffs move to dismiss Count Six without prejudice. Plaintiffs maintain that in addition to Section 505(a)(2), 33 U.S.C. § 1323 (hereafter "Section 313"), is an explicit statutory waiver of sovereign immunity affording this Court subject matter jurisdiction over plaintiffs' claims.

*Section 505(a)(2)*

Although plaintiffs move to dismiss Count Six, this Court will nonetheless analyze the waiver of immunity contained in Section 505(a)(2), to the extent plaintiffs are claiming this section applies to Count One of their Complaint.

The Court finds that Section 505(a)(2) is an explicit waiver of the federal government's sovereign immunity. Section 505(a)(2) provides:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf-
>
> \* \* \* \* \* \*
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

Thus, on the plain face of the statute Congress clearly and unequivocally waived sovereign immunity as to the Administrator[8] to the extent a plaintiff asserts a claim for failure on the part of the Administrator to perform a nondiscretionary act.

Section 505(b) of the Clean Water Act requires that a plaintiff provide the Administrator with sixty days notice prior to filing a citizen suit under Section 505(a)(2). The Complaint does not aver that plaintiffs complied with this requirement and, in fact, plaintiffs concede in their opposition brief that they provided only fifteen days' notice.

The notice provision contained in Section 505(b) is jurisdictional in nature and a failure to comply with the requirement strips the federal courts of subject matter jurisdiction. *See Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir.1995) (trial court properly dismissed citizen suit under Clean Water Act for lack of subject matter jurisdiction where plaintiffs failed to comply with notice provision). *See also Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S.Ct.

---

**8.** The term "Administrator" is defined as the administrator of the USEPA. 33 U.S.C. § 1251(d). Since plaintiffs' claim under 505(a)(2) is asserted only as to the USEPA defendants, this Court need not address whether Section 505(a)(2) waives immunity with respect to the Corps Defendants.

304, 107 L.Ed.2d 237 (1989) (no subject matter jurisdiction exists in federal court where plaintiffs failed to comply with 60 day notice provision similar to Clean Water Act provision).

Accordingly, this Court finds that due to plaintiffs' admitted failure to comply with the notice provision contained in Section 505(b), Section 505(a)(2) does not waive sovereign immunity in this case.

*Section 313*

In addition to the waiver of immunity contained in the citizen suit provision, plaintiffs claim that Section 313 of the Clean Water Act waives sovereign immunity in this case.

The Federal Defendants claim that Section 313 is inapplicable because it provides a waiver of immunity only with respect to actions in which the government is the alleged polluter. According to the Federal Defendants, there is no such allegation in this case.

Section 313 of the Clean Water Act, entitled "Federal Facilities Pollution Control" provides, in part,

(a) Each ...agency...of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants...shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges...

33 U.S.C. § 1323.

▆▆▆ Only Congress can waive the federal government's sovereign immunity, and any waiver of sovereign immunity must be construed strictly, with all doubts resolved in favor of the sovereign. *Lane v. Pena,*

518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted). With this standard in mind, this Court finds that the waiver of sovereign immunity contained in Section 313 is inapplicable to this case.

On its face, Section 313 acts to waive sovereign immunity only where an arm of the federal government is an alleged polluter. *See also Colorado Wild, Inc. v. United States Forest Service,* 122 F.Supp.2d 1190 (D.Colo.2000) (no waiver of sovereign immunity under Section 313 where plaintiffs did not allege that Forest Service was engaged in polluting at a federal facility). In those instances, Congress indicated its intent to require governmental entities to comply with pollution requirements to the same extent as nongovernmental polluters. *See United States Dep't of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) ("The federal-facilities sections of the CWA and RCRA govern the extent to which federally operated facilities, such as DOE's Fernald facility are subject to...statutes...and regulation and enforcement programs."). There is no indication in the statute that Congress intended to waive sovereign immunity with respect to agency enforcement decisions over third parties, such as those at issue in this case.

Plaintiffs do not allege that the Federal Defendants are operating a federal facility. Accordingly, this Court finds that the waiver of sovereign immunity contained in Section 313 is inapplicable to this case.

**The Administrative Procedure Act**

Although recognizing that the Administrative Procedure Act contains a general waiver of sovereign immunity, the Federal Defendants argue that this Court lacks subject matter jurisdiction under the Act because plaintiffs fail to allege the exis-

tence of a nondiscretionary duty to act on the part of the Federal Defendants.

Specifically, the USEPA Defendants argue that the Army Corps of Engineers, not the USEPA Defendants, issued the Section 404 Permit to Cleveland. Accordingly, the USEPA Defendants do not have the authority to enforce, suspend or revoke the Section 404 Permit. Alternatively, the USEPA Defendants claim that any decision concerning enforcement is entirely discretionary.

The Corps Defendants argue that plaintiffs' Complaint asserts a claim for failure to vacate or suspend the Section 404 Permit upon the ERAC's determination that the Director of the EPA improperly waived state certification under Section 401. The Corps Defendants claim that whether to vacate or suspend a Section 404 Permit is entirely discretionary. In addition, the Corps Defendants assert, like the USEPA Defendants, that the decision to enforce a Section 404 permit is a discretionary act for which no statutory waiver of immunity applies under the Administrative Procedure Act.

In sum, the Federal Defendants claim that because all of plaintiffs' claims fall within the Federal Defendants' exercise of discretionary authority, the Administrative Procedure Act does not waive sovereign immunity. As such, this Court is without subject matter jurisdiction over plaintiffs' claims.

Plaintiffs argue that the thrust of their Complaint concerns the invalidity of the Section 404 Permit as originally issued. Plaintiffs claim that the Federal Defendants have a nondiscretionary duty to issue a Section 404 permit only after receipt of a valid state certification (or waiver) pursuant to Section 401. Plaintiffs maintain that the Complaint alleges that the

Federal Defendants abdicated this nondiscretionary duty by issuing a Section 404 permit without complying with Section 401. Plaintiffs also maintain that even if the Complaint is construed to assert a claim for failure to enforce, suspend or revoke the Section 404 Permit, the Federal Defendants were under a nondiscretionary duty to find Cleveland in violation of the Section 404 Permit and to issue a compliance order. According to plaintiffs, these nondiscretionary duties fall within the Administrative Procedure Act's explicit waiver of sovereign immunity, and afford this Court with subject matter jurisdiction over plaintiffs' claims.

The Administrative Procedure Act grants a court jurisdiction to review the actions taken by an agency of the federal government "except to the extent that(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. 701(a). Thus, where a plaintiff challenges a nondiscretionary act [9] of a federal agency, judicial review is appropriate under the Administrative Procedure Act. *Friends of the Crystal River v. United States Env. Prot. Agency*, 35 F.3d 1073 (6th Cir.1994).

The pivotal issue before this Court is whether plaintiffs' Complaint alleges a nondiscretionary act on the part of the Federal Defendants. If so, this Court has jurisdiction over plaintiffs' claims.

*The Gravamen of Plaintiffs' Complaint*

At the outset, this Court must determine whether plaintiffs' Complaint alleges that the Federal Defendants wrongfully issued the Section 404 Permit. The Federal Defendants argue that the allegations in the Complaint state a claim for failure to enforce the terms of the Section 404 Permit and failure to revoke or suspend the Sec-

---

**9.** In addition, the nondiscretionary act challenged must be a "final act." The Federal Defendants do not claim that the actions taken were not final.

tion 404 Permit after the ERAC's determination that the Section 401 waiver was invalid. According to the Federal Defendants, plaintiffs' Complaint does not allege that the initial issuance of the Section 404 Permit was unlawful.

Plaintiffs maintain that, in addition to alleging failure to take enforcement action (including failure to revoke or suspend the Section 404 Permit), the Complaint can fairly be read to assert a claim for wrongful issuance of the Section 404 Permit. In support of their argument, plaintiffs cite paragraphs 70, 77, 87, 95 and 101 [10] of the Complaint, which provide:

70. Absent a § 401 Certification, or a valid waiver thereof, the ACOE has no discretion to issue a § 404 Permit for the Project. Because the Director's attempted express waiver is unlawful, *continuation* on the Project under [the Section 404 Permit] is also unlawful, and violative of the Clean Water Act. (emphasis added).

77. An actual controversy has arisen and now exists between Plaintiffs and Defendants, and each of them, concerning the validity of [the Section 404 Permit] and . . . their respective rights and duties with respect thereto. As set forth more fully above, Plaintiffs contend that the ACOE has no authority to issue the Permit in the absence of a valid § 401 Certification or waiver, and that the Permit is therefore unlawful and thus invalid, and that the *ACOE has a non-discretionary legal duty to suspend the Permit* until such time as all other legally required permits and certifications, including a § 401 Certification, are obtained for the Project. . . . (emphasis added).

87. As set forth more fully above, Plaintiffs have a strong probability of prevailing on the merits where, among other things: (a) there is no § 401 Certification for the Project; (b) there is no valid waiver of the § 401 Certification; (c) an implied waiver of the § 401 Certification cannot exist in fact or in law and (d) there is no valid Governor's Certification. Therefore, [the Section 404 Permit] is not legally supportable, and the express conditions upon which the ROD is based have not been met, thereby rendering the *continuation* of Federal funding unlawful. (emphasis added).

95. As set forth above, 22 U.S.C. § 1341(a)(1) imposes a non-discretionary duty on Defendants USEPA and the ACOE, and each of them, to withhold a § 404 Permit for the Project unless and until they receive either a § 401 Certification or a valid waiver from the State of Ohio. In addition, 33 U.S.C. § 1341(a) imposes a specific, non-discretionary duty on the USEPA Administrator to withhold a waiver unless he/she is given written notification of the existence of an express waiver or the State's failure to act on a § 401 Application. In addition, Defendants, and each of them, have a nondiscretionary duty to, among other things, reevaluate, suspend or revoke a § 404 Permit based on false or misleading information.

■ This Court finds that plaintiffs' Complaint is fairly read to challenge only the Federal Defendants' failure to take action after learning that the ERAC invalidated the OEPA's waiver under Section 401. The thrust of plaintiffs' Complaint alleges that upon learning of the ERAC's

---

10. The Court notes that ¶ 101 is directed at actions taken by the State Defendants. Accordingly, ¶ 101 is not relevant to whether this Court has subject matter jurisdiction over the Federal Defendants.

ruling, the Federal Defendants had an obligation to take some action, i.e., suspending or revoking the Section 404 permit. For example, in paragraph 96 plaintiffs allege,

Defendants, and each of them, have breached their nondiscretionary duty by, among other things, *failing and refusing to reevaluate, suspend or revoke the existing § 404 Permit even though no valid § 401 Certification of waiver exists,* and the existing § 404 Permit was granted based on the false and misleading information. Further, Plaintiffs are informed and believe, and upon such information and belief allege, that no written notification of an implied waiver was given by Defendant ACOE to Defendant Regional Administrator sufficient to form the basis for a valid waiver.

(Compl. ¶ 96 (emphasis added); see also Compl. ¶¶ 26, 27, 58, 60, 61, 62, 63, 69, 83, 84). While plaintiffs clearly allege that the Section 404 Permit is invalid now, there is no allegation that the permit was invalid when issued. This Court does not find that the paragraphs cited by plaintiffs allege that the Federal Defendants wrongfully issued the Section 404 permit in the first instance.

As the Federal Defendants point out, the exhibits plaintiffs attach to their Complaint support this conclusion. In exhibit U, a letter from plaintiffs to the Corps Defendants, plaintiffs state,

Please be advised at the outset that Olmsted Falls does not now, nor has it ever, claimed that the ACOE acted wrongfully by accepting the express waiver of the State of Ohio's authority to act on Cleveland's Application for 401 Certification. Indeed, the ACOE was entitled to rely upon Cleveland's affir-

mative reassurances that an express waiver was allowable under the law.

(Compl.Ex. U).

Plaintiffs addressed similar comments to the Regional Director of the USEPA,

The [ACOE] had properly relied upon the Director's express waiver when it issued [the Section 404 Permit]...Following the ERAC ruling, however, no valid waiver exists (and no certification was ever issued). Thus, [the Section 404 Permit] is now also invalid. Olmsted Falls therefore requests your assistance in revoking or suspending [the Section 404 Permit]...

(Compl.Ex. W).

Based on the Complaint read as a whole, this Court finds that plaintiffs' Complaint does not allege that the Federal Defendants acted wrongfully with respect to the initial issuance of the Section 404 Permit. Accordingly, for jurisdictional purposes, this Court need only determine whether the Federal Defendants' failure to take action upon after learning of the ERAC's actions is a nondiscretionary duty affording this Court jurisdiction over plaintiffs' claims.

Plaintiffs claim that the enforcement duties outlined in the Clean Water Act, 33 U.S.C. § 1319 (hereafter "Section 309"), are nondiscretionary in nature and, accordingly, afford this Court with jurisdiction pursuant to the Administrative Procedure Act.

The Federal Defendants argue that the decision to initiate enforcement action under Section 309 is committed to agency discretion and thus is unreviewable by this Court. In addition, the Corps Defendants argue that the decision whether to suspend or revoke an existing Section 404 permit is entirely discretionary and, likewise, not subject to review by this Court.

This Court finds that any refusal by the Federal Defendants to initiate enforce-

ment proceedings, as well as the Corps Defendants' refusal to suspend or revoke the Section 404 Permit, are decisions soundly committed to agency discretion. As such, this Court lacks subject matter jurisdiction to review these decisions.

*Presumption of Unreviewability*

In *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), plaintiffs brought an action against the Food and Drug Administration ("FDA") seeking to compel the FDA to take enforcement action with respect to drugs plaintiffs claimed were not FDA-approved. The Supreme Court held that unlike decisions that involve an affirmative act of approval made pursuant to clear guidelines, agency decisions not to take enforcement action are presumptively unreviewable. *Heckler,* 470 U.S. at 831, 105 S.Ct. 1649. The Court noted,

> This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

*Id.* (citations omitted).

■ The presumption of unreviewability may be overcome "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 834, 105 S.Ct. 1649. Accordingly, courts analyzing whether jurisdiction exists over agency de-

cisions not to take enforcement action must first look to see whether Congress provided specific guidelines with respect to how those enforcement decisions must be made. *Id.* As stated by the Supreme Court in *Heckler,*

> If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is "law to apply" under [Administrative Procedure Act] § 701(a)(2), and courts may require that the agency follow that law; if [Congress] has not, then an agency refusal to institute proceedings is a decision "committed to agency discretion by law" within the meaning of that section.

*Id.* at 834–35, 105 S.Ct. 1649.

■ This Court begins with the premise that the Federal Defendants' refusal to take enforcement action is a decision committed to agency discretion. This presumption, however, does not end the Court's inquiry. Under *Heckler,* this Court must determine whether Congress provided meaningful standards limiting the Federal Defendants' discretion with respect to refusals to take enforcement action under the Clean Water Act.

*Enforcement Action Under Section 309*

Plaintiffs argue that the use of the word "shall" on the face of Section 309 indicates Congress's intention to limit agency discretion with respect to enforcement action under the Clean Water Act.. Section 309(a)(3) provides,

> Whenever on the basis of any information available to him the Administrator [11]

11. The Court notes that on the face of the statute, enforcement decisions under Section 309 are the responsibility of the Administrator of the USEPA, not the Corps. Moreover, the statute provides the EPA with enforcement authority only with respect to Section 404 permits issued by States. It does not appear

on the face of the statute that the USEPA possesses enforcement authority over Section 404 permits issued by the Corps. The USEPA Defendants argue that they lack the authority to issue Section 404 permits and, accordingly, lack the authority to issue enforcement orders with respect to Section 404 permits issued by

finds that any person is in violation of [permit conditions], he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

33 U.S.C. § 1319(a)(3).

Plaintiffs claim that once they informed the Federal Defendants of the ERAC's decision, the Airport construction was proceeding without a valid Section 404 permit. Upon learning this fact, plaintiffs claim that the Federal Defendants were under a mandatory duty to (1) find that violation existed; and (2) issue a compliance order.

The Federal Defendants claim that the language in Section 309 does not impose mandatory duties. Defendants cite the Court to the Eighth Circuit case *Dubois v. Thomas*, 820 F.2d 943 (8th Cir.1987), which concluded after an extensive review of the statute and legislative history, that the Clean Water Act imposes only discretionary duties to take enforcement action.

In *Dubois*, plaintiffs filed a citizen's suit based on the Administrator's failure to take enforcement action against a municipality engaged in the discharge of pollutants without a valid permit. *Id.* at 944. The Administrator moved to dismiss the action based on lack of subject matter jurisdiction. The district court denied the motion, but the Eighth Circuit Court of Appeals reversed. *Id.* at 945. The Eighth Circuit held that enforcement duties under the Clean Water Act are discretionary duties and federal courts are without subject matter jurisdiction to entertain suits against the USEPA for failure to take enforcement action. *Id.*

In holding that no jurisdiction existed over plaintiffs' claims, the Eighth Circuit separated the USEPA's obligation to "investigate and find a violation" with its

obligation to take "enforcement action" once it is determined that a violation exists.

With respect to the Administrator's duty to "investigate and find a violation," the Eighth Circuit noted that Section 309(a)(3) on its face does not mandate that the Administrator conduct any investigation or make findings. *Dubois*, 820 F.2d at 948. Instead, the statute simply provides "[w]henever, on the basis of information provided to him, the Administrator finds..." This statutory language places no affirmative duty on the Administrator to "find" a violation.

Turning to the Administrator's duty to take enforcement action upon the finding of a violation, the Eighth Circuit noted that the enforcement provision of Section 309(a)(3) contains language which may be read as imposing nondiscretionary duties on the Administrator. This portion of Section 309(a)(3) provides that once a violation is found, the Administrator "shall issue an order ... or shall bring a civil action...." 33 U.S.C. § 1319(a)(3). The court found that although the use of the word "shall" may arguably be read to impose a mandatory duty, its use does not automatically result in the finding of a nondiscretionary duty. As support for its position, the *Dubois* court pointed to the Supreme Court's refusal to impose mandatory enforcement action on the FDA in *Chaney* even though the statute utilized the word "shall." *Dubois*, 820 F.2d at 948 ("The Court in *Chaney* ... declin[ed] to interpret the phrase 'shall be imprisoned' as mandatory language."). *See also City of Seabrook v. Costle*, 659 F.2d 1371 (5th Cir.1981) (similar language in the Clean Air Act does not impose a mandatory enforcement obligation).

the Corps. This Court, however, need not reach the issue since the Court concludes that

enforcement authority is soundly committed to agency discretion in any event.

The Eighth Circuit noted, however, that use of the word "shall" in some instances will indicate Congress's intent to impose a mandatory duty. Accordingly, the Eighth Circuit reviewed the legislative history of the Clean Water Act in an effort to ascertain Congress's intent. Finding that no clear legislative intent could be gleaned, the court deferred to the USEPA's interpretation of the enforcement provision of the Clean Water Act, stating,

> We believe that neither the language of § 309(a)(3) nor its legislative history can be said to evince a clear intent of Congress as to whether enforcement duties of the Administrator are mandatory or discretionary. Under such circumstances, the Administrator's interpretation is a permissible construction of § 309(a)(3). That interpretation therefore must stand.
>
> We hold that the duties imposed on [the USEPA] by § 309(a)(3) of [the Clean Water Act] are discretionary. The district court should have dismissed the [Clean Water Act] claim against appellants for lack of subject matter jurisdiction.

*Dubois,* 820 F.2d at 950–51.

Similarly, in *Sierra Club v. Whitman,* 268 F.3d 898 (9th Cir.2001), the Ninth Circuit concluded that both the duty to "investigate and make findings," [12] as well as the duty to initiate enforcement proceedings upon the finding of a violation are discretionary acts.

With respect to the duty to take enforcement action, the Ninth Circuit found that although use of the word "shall" generally denotes a nondiscretionary duty, use of the word "shall" is not conclusive. *Sierra Club,* 268 F.3d at 902. Upon review of the legislative history, the court found that Congress intended the enforcement provisions of the Clean Water Act to be discretionary. The court found the following legislative history contained in S.Rep. No. 92–414, 92d Con., 1st Sess. (197), reprinted in 1972 U.S.C.C.A.N. 3668, 3730, instructive:

> ...[T]he authority of the Federal Government should be used judiciously by the Administrator in those cases deserve [sic] Federal action because of their national character, scope, or seriousness. The committed intends the great volume of enforcement actions be brought by the State. It is clear that the Administrator is not to establish an enforcement bureaucracy but rather to reserve his authority for the cases of paramount interest.

*Sierra Club,* 268 F.3d 898 at 904. *See also Sierra Club v. Train,* 557 F.2d 485 (5th Cir.1977) ("We hold that the duties imposed by § 1319(a)(3) on the EPA Administrator are discretionary.") [13]

In addition, the Ninth Circuit noted that Congress specifically provided that to the extent the Administrator fails to take action to require compliance, the Clean Water Act affords private citizens the right to take enforcement action against wrongdoers. "By allowing citizens to sue to bring about compliance with the Clean

---

**12.** Like the Eighth Circuit, the Ninth Circuit determined that § 1319(a)(3) contained no language suggesting that the Administrator has any duty to make findings. Instead, the statute simply indicates what follows a finding by the Administrator. *Sierra Club,* 268 F.3d at 902.

**13.** Although plaintiffs cite *Sierra Club v. Train* in support of their contention that the duties imposed by Section 309(a)(3) are nondiscretionary, this Court is at a loss to why plaintiffs rely on that case. Given that the court in *Sierra Club v. Train* reached precisely the opposite conclusion urged by plaintiffs, this Court finds that *Sierra Club v. Train* actually supports the Federal Defendants' contention that the duties imposed under Section 309(a)(3) are discretionary.

Water Act, Congress implicitly acknowledged that there would be situations in which the EPA did not act." *Sierra Club*, 268 F.3d at 905.

Based on the presence of the citizen suit provision in the Clean Water Act and the legislative history, the Ninth Circuit determined that the enforcement provisions in Section 309 are discretionary duties. Accordingly, the Ninth Circuit upheld the trial court's determination that federal courts lack subject matter jurisdiction over USEPA decisions not to take enforcement action.

Plaintiffs cite *Greene v. Costle*, 577 F.Supp. 1225 (W.D.Tenn.1983) in support of their position that the Clean Water Act's enforcement duties are nondiscretionary. In *Greene*, the district court initially determined that subject matter jurisdiction existed with respect to plaintiffs' enforcement action under the Clean Water Act. In 1990, however, the *Greene* court reversed its initial decision and held that *Chaney* and *Dubois*, which were decided after the *Greene* court's initial jurisdictional determination, mandated a finding that the court lacked jurisdiction over plaintiffs' enforcement claims. *See Greene v. Reilly*, 20 ELR 21161 (W.D.Tenn.1990), *aff'd on other grounds*, 956 F.2d 593 (6th Cir.1992). Accordingly, any reliance plaintiffs place on the *Greene* case is seriously misplaced.

This Court finds the reasoning of the Eighth and Ninth Circuits persuasive. This Court finds that on its face, Section 309 imposes no mandatory duty on the Administrator to investigate or make findings. Accordingly, for purposes of this case, the inquiry could end here. Absent a duty to investigate and make findings, there can be no mandatory duty to take enforcement action, where as here, the Administrator made no finding that a vio-

lation existed. Absent a finding by the Administrator that a violation existed, there would be nothing to take enforcement action against.

This Court supposes that a situation could arise where the Administrator investigates and finds a violation of the Clean Water Act, yet refuses to take enforcement action. Even in such a situation, this Court finds that well established case law dictates that the decision not to take enforcement action pursuant to Section 309 is discretionary. Where the agency action complained of is discretionary, the waiver of sovereign immunity in the Administrative Procedure Act is inapplicable. Accordingly, this Court finds that the Administrator Procedure Act does not waive sovereign immunity with respect to plaintiffs' Clean Water Act claims.[14]

*Enforcement Action Under 33 C.F.R. § 325.7*

Defendants argue that this Court lacks subject matter jurisdiction over the Corps Defendants' decision not to reevaluate the issuance of the Section 404 Permit issued to Cleveland because the language contained in 33 C.F.R. § 325.7 indicates that any decision by the Corps Defendants is purely discretionary.

Plaintiffs do not respond to the Corps Defendants' argument.

Upon review of 33 C.F.R. § 325.7, this Court finds that it lacks subject matter jurisdiction over the Corps Defendants' decision not to reevaluate the issuance of a Section 404 permit. On its face the regulation does not mandate the reevaluation of an issued permit. The relevant provision provides,

§ 325.7 Modification, suspension or revocation of permits.

---

**14.** The Court notes that for these same reasons, plaintiffs would not be entitled to bring

a citizen's suit against the USEPA Defendants for failure to take enforcement action.

(a) General. The district engineer *may* reevaluate the circumstances and conditions of any permit...

(b) Modification. Upon request...the district engineer *may* determine that the public interest requires a modification of the terms or conditions of the permit...

(c) Suspension. The district engineer *may* suspend a permit after preparing a written determination...

(d) Revocation.... the authority who made the decision on the original permit *may* revoke it.

(e) Regional permits. The issuing official *may* ...revoke regional permits...

33 C.F.R. § 325.7 (emphasis added).

Based on the obvious discretionary nature of the language used in the regulations, together with the lack of authority from plaintiffs, this Court finds that any decision by the Corps Defendants not to reevaluate the Section 404 Permit issued to Cleveland is not reviewable by this Court. *See also Missouri Coalition for the Environment v. Corps of Eng'rs of the United States*, 866 F.2d 1025 (8th Cir.1989) ("We agree with the district court that a decision not to modify, suspend or revoke a Section 404 permit is one committed to the Corps' absolute discretion and, as such, it is not reviewable under the Administrative Procedure Act.").

Accordingly, this court lacks subject matter jurisdiction under the Administrative Procedure Act to review the Corps Defendants' decision not to reevaluate Cleveland's Section 404 Permit.

**The Federal Mandamus Statute**

The Federal Defendants claim that the federal mandamus statute, 28 U.S.C. § 1361, does not contain an explicit waiver of sovereign immunity. In addition, the Federal Defendants maintain that mandamus relief is inapplicable in this case because plaintiffs cannot establish that they are owed a clear, nondiscretionary duty.

Plaintiffs claim that they have alleged the existence of a nondiscretionary duty on the part of the Federal Defendants under the Clean Water Act.

■ In order for mandamus jurisdiction to lie, plaintiffs must show that (1) all administrative remedies have been exhausted; and (2) defendant violated a clear, nondiscretionary duty owed to plaintiffs. *Buchanan v. Apfel*, 249 F.3d 485, 491 (6th Cir.2001) (*citing Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)).

The Federal Defendants do not claim that plaintiffs failed to exhaust administrative remedies. Accordingly, the issue before this Court is whether plaintiffs' allege the violation of a clear, nondiscretionary duty.

■ As discussed above, the Court finds that neither the USEPA Defendants nor the Corps Defendants owe plaintiffs a nondiscretionary duty to take enforcement action with respect to Cleveland's Section 404 Permit. In addition, this Court determined that any duty on the part of the Corps Defendants to revoke or suspend the Section 404 Permit is discretionary. Accordingly, this Court lacks subject matter jurisdiction over plaintiffs' mandamus claim against the Federal Defendants.

*Summary of Opinion–Federal Defendants*

As set forth above, this Court finds that the Clean Water Act's explicit waivers of sovereign immunity are inapplicable to this case. Namely, the waiver of sovereign immunity contained in the citizen suit provision does not apply due to plaintiffs' admitted failure to provide statutory notice prior to filing this lawsuit. Additionally, the waiver of immunity contained in the federal facilities pollution control provision does

**906**

not apply because there is no allegation that the Federal Defendants own or operate a facility engaged in polluting activity.

Plaintiffs have also failed to allege the existence of a nondiscretionary duty, rendering the waivers of sovereign immunity contained in the Administrative Procedure Act and federal mandamus statute inapplicable. Absent an applicable waiver of sovereign immunity, this Court lacks subject matter jurisdiction over plaintiffs' claims against the Federal Defendants.[15]

*Pendent Jurisdiction Over the State Defendants*

Plaintiffs allege this Court possesses supplemental jurisdiction over the State Defendants because the claims against the State Defendants are intertwined with the claims asserted against the Federal Defendants. (Compl.¶ 2). This Court, having dismissed the federal claims based on lack of subject matter jurisdiction, declines to exercise supplemental jurisdiction over the claims asserted against the State Defendants. *See Wellman v. Wheeling and Lake Erie Railway Co.*, No. 97–3084, 1998 WL 25005, *4 (6th Cir. January 12, 1998)(*citing Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir.1987)) ("We have long recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal issues are dismissed before trial."). Accordingly, the claims against the State Defendants are dismissed.

**CONCLUSION**

For the forgoing reasons, this Court GRANTS the Federal Defendants' Motion to Dismiss and declines to exercise supplemental jurisdiction over the claims against

the State Defendants'.[16] Accordingly, this case is DISMISSED.

IT IS SO ORDERED.

---

**15.** Plaintiffs do not dispute that the Declaratory Judgment Act does not contain a waiver of sovereign immunity. In addition, the Court notes that Count Five, which seeks preliminary and injunctive relief, does not by itself afford this Court with jurisdiction.

**16.** The Court notes that the State Defendants have filed separate motions to dismiss. Because this Court declines to exercise supplemental jurisdiction over the claims against the State Defendants, this Court offers no opinion with respect to the merits of these pending motions.